THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: October 10, 2013



Susan V. Kelley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
_____

In re                                                         Chapter 7
Susan Marie Rove,                            Case No. 13-25638-svk
            Debtor.
_____

**AMENDED (to correct clerical error)
DECISION AND ORDER ON TRUSTEE'S OBJECTION TO EXEMPTION**
_____

        Susan Marie Rove (the "Debtor") filed a Chapter 7 bankruptcy petition on April 26, 2013. Her schedule of assets included "Stock in Dairy Farmers of America" valued at $6,462. Actually, the "stock" is an equity account comprised of capital retained from milk sales she made and allocated earnings of the Dairy Farmers of America Cooperative. The Debtor claimed this equity account exempt under 11 U.S.C. (Bankruptcy Code) § 522(d)(10)(E), and the Trustee objected. The parties do not dispute any of the facts or operative documents. After the submission of briefs, the Court took the issue under advisement. This decision and order constitutes the Court's findings of fact and conclusions of law in this contested matter.

        The Trustee bears the burden of proving that the exemption is not properly claimed. Fed. R. Bankr. P. 4003. Although exemptions are construed liberally in favor of the debtor, courts may not enlarge an exemption or read into it provisions not found there. *Johnston v. Barney*,

842 F.2d 1221, 1223 (10th Cir. 1988). The exemption claimed here permits a debtor to exempt the right to receive:

> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>
> (ii) such payment is on account of age or length of service; and
>
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986 [26 USCS § 401(a), 403(a), 403(b), or 408].

11 U.S.C. § 522(d)(10)(E).

The Supreme Court explained that the debtor must satisfy three requirements to claim this exemption: "(1) The right to receive payment must be from a stock bonus, pension, profitsharing, annuity, or similar plan or contract; (2) the right to receive payment must be on account of illness, disability, death, age, or length of service; and (3) even then, the right to receive payment may be exempted only to the extent that it is reasonably necessary [to] support the accountholder or his dependents." *Rousey v. Jacoway*, 544 U.S. 320, 325-26 (2005) (internal quotations omitted). The parties do not dispute that the funds in the account are reasonably necessary for the Debtor's support, but the Debtor contends that the equity account is a profitsharing or similar plan from which the Debtor is entitled to receive payments because of her age, while the Trustee maintains that the Debtor's account is simply a stock or capital investment account.

The parties' submissions show that the Debtor and her late husband were farmers who sold milk to the Dairy Farmers of America ("DFA") Cooperative. The Debtor filed a copy of a

2

DFA brochure explaining her right to receive payments from the DFA account. According to the brochure, the Debtor's DFA equity account was funded by deductions from her milk checks plus allocated earnings of the DFA Cooperative. As an inactive equity holder, the Debtor may receive her the funds in her account through (1) normal retirement – defined as ten years from the time she ceased milking operations; (2) age retirement – available when an equity holder who has ceased milk production reaches age 67; (3) estate retirement – paid on death of the account holder; or (4) selling the equity to an active DFA member. The Debtor's attorney filed a letter stating that the Debtor is claiming the right to payment under the age retirement provision. The Debtor was 65 years old when she filed her petition, and she will be entitled to withdraw her funds at 10% per year when she reaches 67 on October 8, 2014.

The Debtor's attorney's letter states: "She is currently unable to access the fund. It appears, therefore, that the fund is a profit sharing plan as authorized by 522(d)(10)(E)." However, the Debtor's Base Capital Statements show that the last year she sold milk to DFA was 2003. Therefore, under the "normal" retirement option, the Debtor can receive 100% of the equity account in 2013. And, as the Trustee points out, she also could access her funds by selling her equity account to an active DFA member.

Neither the Debtor nor the Trustee cited a case on point, and the Court's independent research failed to unearth any precedent on whether a debtor's interest in a dairy cooperative equity account qualifies for the § 522(d)(10)(E) exemption. But, in *Rousey*, the Supreme Court examined whether an IRA qualified for the same exemption. In that case, the Bankruptcy Court, Bankruptcy Appellate Panel and Eighth Circuit Court of Appeals all held that the debtors' IRA was not payable on account of age and was not a similar plan to a stock bonus, profitsharing or annuity plan. Similar to the Trustee's argument here, the Eighth Circuit reasoned that the IRA

was a "readily accessible savings account" which the debtors could access at any time (albeit with some tax penalties). *In re Rousey*, 347 F.3d 689, 693 (2003). The Supreme Court reversed.

First the Court analyzed whether the debtors' right to receive distributions from the IRA was on account of the debtors' age. The trustee argued that, since the debtors could receive early withdrawals from the IRA, their right to payment was not on account of their age. Defining "on account of" to require a causal connection, the Court found that the debtors' right to payment was causally connected to their age. *Rousey*, 544 U.S. at 327.

> Because the 10-percent penalty applies proportionally to any amounts withdrawn, it prevents access to the 10-percent that the Rouseys would forfeit should they withdraw early, and thus it effectively prevents access to the entire balance in their IRAs. It therefore limits the Rouseys' right to "payment" of the balance of their IRAs. And because this condition is removed when the accountholder turns age 59 1/2, the Rouseys' right to the balance of their IRAs is a right to payment "on account of" age.

*Id.* at 327-28.

In response to the trustee's argument that the debtors were entitled to penalty-free distributions for reasons other than age in certain circumstances, the Court stated that the exceptions do not undermine the fact that the debtors could not obtain unrestricted use of their funds until age 591/2, and that § 522(d)(10)(E) requires that the right to payment be on account of age, "not that it be solely on account of this factor." *Id.* n. 3.

Similarly, the Debtor's right to payment in this case is "on account of" her age. Like the debtors in *Rousey*, she could access her funds prior to retirement age under certain circumstances. But according to her attorney's letter, she is selecting the "age retirement" option and waiting until age 67 to use the funds to support her retirement. The Debtor does not have *unrestricted* access to her account before she turns 67 – to receive her funds prior to that date, she would have to cease dairy operations (or at least quit selling to the Cooperative) and wait ten years. The debtors in *Rousey* could have accessed their funds by paying a tax penalty or using

4

the funds for the purchase of a first house, but those conditions did not defeat their exemption. As the Supreme Court noted, as long as the payment is on account of age, age does not have to be the sole method to access the funds. The Court's analysis in *Rousey* applies here, and the Debtor's right to payment of the DFA funds is on account of age.

The second requirement is that the account must be similar to a stock bonus, pension, profitsharing, or annuity plan or contract. The Supreme Court said that the plan must be "like, though not identical to, the specific plans or contracts listed in § 522(d)(10)(E), and consequently must share characteristics common to the listed plans or contracts." *Id*. at 329. The Court also defined "profitsharing plan" as "[a] system by which employees receive a share of the profits of a business enterprise," and concluded that what all the plans listed in § 522(d)(10)(E) have in common is that they "provide income that substitutes for wages." *Id.* at 330, 331. The Supreme Court concluded that the Rouseys' IRA was a similar plan or contract, and, under the Court's broad reasoning, the Debtor's DFA equity account also qualifies.

In determining whether a plan is intended as a replacement for income, "courts examine the nature and contents of the contract, whether the payments were intended to be a substitute for wages, whether the contributions were made over time, the existence of multiple contributors, the return on the investment, and the degree of control the debtor may exercise over the assets." *In re Lawless*, 2012 Bankr. LEXIS 3345, 24-25 (Bankr. E.D. Tenn. July 20, 2012) (citing *In re Vickers*, 408 B.R. 131, 139-40 (Bankr. E.D. Tenn. 2009). *Lawless* involved the exemption of a debtor's interest in an insurance company's deferred compensation plan under a Tennessee exemption statute modeled after § 522(d)(10)(E). The Agent Security Compensation Plan would only pay the debtor upon a "separation of service" resulting from a "qualified cancelation," including death, disability, or retirement. Although in the end the plan did not qualify for the exemption, the court determined that the debtor's interest in the plan fell within the definition of

5

paid "on account of" death, age or length of service and that the plan was similar to the plans listed in the exemption statute. Analyzing whether the payments were a substitute for income, the court noted that the funds were not segregated in individually designated accounts for each agent, but were a general debt of the insurance company owed to the individual agents from the general assets of the insurance company. The court concluded:

> Accordingly, the Debtor exercises zero control over the funds which are contributed and held exclusively by [the insurance company] until an agent's death, total and permanent disability, or retirement. It appears clear that the payments are then intended to be a substitute for the agent's wages that he or she is no longer receiving and are, thus, deferred compensation for services rendered.

2012 Bankr. LEXIS 3345 at *27. *See also Foellmi v. Ries (In re Foellmi)*, 473 B.R. 905, 908 (B.A.P. 8th Cir. 2012) (Quick Trip Profit Sharing Plan under which limited partnership interests were distributed for "enhancement of employee loyalty" qualified for exemption).

Like the payments from the plans discussed in *Lawless* and *Foellmi,* payments from the Debtor's equity account with DFI are a substitute for income. The Debtor's account was funded over several years by deductions from her milk checks plus a share of DFI's earnings. (Since farmers who produce milk for a dairy can be likened to the employees of a business enterprise, the latter component falls squarely within *Rousey's* definition of a profitsharing plan.) Multiple contributors – other dairy farmers – participated in the DFI equity account program. Although she receives an individualized statement of account, there is no evidence that the Debtor's funds are segregated from the other funds of the Cooperative. The Debtor is unable to exercise any control over the funds until they are due to be paid to her. When she reaches age 67 and is no longer receiving income from her dairy operation, she can count on payments from her equity account to help support herself in retirement. These factors add up to the conclusion that the Debtor's payments from the account are a substitute for income.

6

The Trustee compares the account to an investment account because the Debtor does not have to wait until she reached age 67 to access the account. But the fact that the Debtor could reach the funds by quitting dairy farming and waiting ten years is similar to a "separation from service," and does not render the funds nonexempt. *See In re Rector*, 134 B.R. 611, 616 (Bankr. W.D. Mich. 1991) (payment based on permanent separation is akin to future earnings). Moreover, the fact that there are other avenues to reach the account does not disqualify the account from exemption. In *Carmichael v. Osherow (In re Carmichael)*, 100 F.3d 375 (5th Cir. 1996), the court stated:

> The language of [§ 522(d)(10)(E)] does not express a requirement that the right to receive a payment under a 'similar plan or contract' be conditioned 'only' or 'exclusively' on one of the five listed events. . . . As long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor- or absence of some additional factor- cannot destroy exemptibility.

*Id.* at 379.

In sum, the Debtor's right to receive payments from the account is "on account of" her age. And, because the account has a profitsharing component and is intended as a replacement for the Debtor's income, the account is similar to the plans described in § 522(d)(10)(E). The Trustee has not challenged that the funds in the account are reasonably necessary for the Debtor's support. Accordingly, the Debtor's interest in the DFA account meets the three-part test to qualify for exemption under Bankruptcy Code § 522(d)(10)(E) as established in *Rousey*.

For these reasons, the Court overrules the Trustee's objection and allows the Debtor's exemption. It is so Ordered.

#####

7

Case 13-25638-svk    Doc 29    Filed 10/10/13    Page 7 of 7